[Civ. No. 8579.   Third Dist.   Dec. 6, 1955.]

MICHAEL BROUSSEAU, a Minor, etc., et al., Appellants v. CARNATION COMPANY (a Corporation) et al., Respondents.

Anthony J. Scalora for Appellants.

Johnson, Davies & Greve for Respondents.

PEEK, J.—This is an appeal by plaintiffs from a judgment of dismissal entered in favor of defendants upon their motion for a nonsuit.

Summarizing the evidence in light of the well-established rule that, ". . . a nonsuit may be granted only when, disregarding conflicting evidence, giving to plaintiff's evidence all the value to which it is legally entitled and indulging in every legitimate inference which may be drawn from that evidence favorable to plaintiff's case, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff" (*Dunn* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 265, 268 [272 P.2d 745]; *Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 35 [286 P.2d 21]), it appears that defendant Ohman was employed by the defendant Carnation Company as a driver-salesman; that pursuant to instructions from the company's Sacramento branch manager, he drove a small panel truck to which was attached a flat two-wheel trailer in a Fourth of July parade; that on the trailer was an ice cream cabinet containing small paper cups of ice cream which were thrown out to people along the route of the parade by two girls employed by defendant company; that defendant Ohman saw numerous children along the parade route; that there were some ice cream cups which fell into the street; that he couldn't watch all of the time; that he observed people picking up the cups from where they had landed; that when the cups were thrown out Ohman observed that more than a normal amount of excitement was created among the children; that he could see to the rear through two 8-by-8-inch windows in the rear of the truck; that at the time of the accident the truck and trailer were slightly to the right of the center of the street and moving at a speed of from 2 to 4 miles per hour. At the point near where the accident occurred Ohman had been compelled to stop because of a halt in the parade. There were automobiles parked along the street and people standing in the street and

along the curb. Defendant had driven approximately 20 feet from his halted position when the accident occurred. He did not see the accident and was aware of it only when a bystander told him that a boy had been pushed or had fallen under the trailer. The injured boy was standing with his parents and two younger brothers in the front line of a crowd, including a large number of children. When a cup landed in the street approximately 8 feet or so from him, plaintiff Michael Brousseau saw the cup and ran for it, as did numerous other children. As he did so, he was pushed or fell down, and the left wheel of the trailer ran over the right side of his body. Analyzing this evidence in light of the rule approved in the Dunn and Hilyar cases previously mentioned, it is apparent that Ohman was aware that the young women in throwing out the ice cream cups caused great excitement among the children along the parade route; that some of the cups fell in the street; that he paid no attention to what was happening from the time he started his truck until the accident occurred; that he looked to neither side nor through the back windows; that it could well be inferred by the jury that the young ladies' throwing was not as exact as it might have been, and that it could also be inferred that Ohman did not see the Brousseau child because he was not exercising the degree of care commensurate with the danger to be avoided, knowing that small children were in the street along the route of the parade and knowing that the actions of children under such circumstances would be highly unpredictable.

"The presence of children is in itself a warning requiring the exercise of care for their safety. [Citation.] Moreover, if the evidence shows that the driver has knowledge of the presence of children he may be held to have been responsible although it appears that he did not see the injured child in time to prevent the injury." (*Conroy v. Perez*, 64 Cal.App.2d 217, 224 [148 P.2d 680] [quoted with approval in the recent Hilyar case].) It would therefore appear that the jury might well have concluded that Ohman's conduct was not of that degree of care required of one under such circumstances.

Defendants, however, contend that Ohman could not have been guilty of negligence since he had a right to assume that the young women would throw the cups as instructed; and that since the truck itself had passed Michael before he ran into the street and the mishap occurred by his being pushed by someone else into the rear wheel some 15 feet behind the

driver, it cannot be said that he was negligent in any way.  However, the court held in *Richardson* v. *Ham,* 44 Cal. 2d 772, 777 [285 P.2d 269], " 'If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' " Here, the possibility of other children pushing the injured boy into the street as he ran for the ice cream cup was not so remote as not to constitute one of the hazards connected with defendants' activity. Hence under the circumstances the question of Ohman's negligence was one of fact for the jury.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.